United States District Court
Southern District of Texas

**ENTERED**

June 08, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Joseph Gordon, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:24-cv-4125 |
| | § | |
| Digital Air Control, Inc., | § | |
| | § | |
| *Defendant*. | § | |

**JUDGE PALERMO'S
REPORT AND RECOMMENDATION AND ORDER**

This is an employment-discrimination case. ECF No. 1.[1] There are three motions pending before the Court. First, Plaintiff Joseph Gordon moves for leave to file an amended complaint. ECF No. 25.[2] Second, Gordon moves to strike the unsworn depositions of Sean King and Marcus DiFlavio, two employees of Defendant Digital Air Control Inc. ("Digital Air"). ECF No. 34.[3] Third, Digital Air moves for summary judgment. ECF No. 31.[4]

For the reasons discussed below, the Court denies Gordon's motions and recommends granting summary judgment.

---

[1] The district judge referred all pretrial proceedings under 28 U.S.C. § 636. ECF No. 5.

[2] Defendant responded. ECF No. 28.

[3] Defendant responded. ECF No. 36.

[4] Gordon responded. ECF No. 37. Digit Air replied. ECF No. 38.

## I.     BACKGROUND

Digital Air services HVAC systems, including "diagnosing mechanical failures or deficiencies, repairing or replacing equipment, and installing mechanical systems to accommodate facility expansion or construction." ECF No. 31 at 9. On November 4, 2019, Digital Air hired Gordon, a Black "BAS Graphic/UX Specialist," to "create graphical assets and interfaces for building automation software." *Id.* at 10; ECF No. 31-1 (job description and employee acknowledgement).

Jumping ahead to early 2022, Sean King started supervising Gordon. After a few months, King gave Gordon a 2.66 out of 4 on his performance evaluation, ranking him as a "Consistent Contributor." ECF No. 31 at 10; ECF No. 31-2. King observed that Gordon "is very knowledge about graphics and the software that [Digital Air] use[s]" and "consistently produces high quality graphics that look great." ECF No. 31-2 at 2. He also noted, though, that Gordon "could improve" his attention to detail, "such as spelling and consistency." *Id.* Overall, Gordon received a positive review.

The next review was not so positive. In his March 2023 performance evaluation, King reiterated that Gordon's "attention to detail and accuracy in particular need to improve," explaining that Gordon made errors "consistently from one project to the next," such as "copy/pasting symbols from one job to another"

without "re-linking certain components . . . to the current job." ECF No. 31 at 10; ECF No. 31-3 at 2. King commended Gordon for being "the most skilled person in the department" about keeping his "knowledge and skills up to date" but expressed that he could "be more proactive about learning more about other aspects of the job" and "seeking out feedback." ECF No. 31 at 10; ECF No. 31-3 at 3. According to King, Gordon would "often make an assumption and press forward with it," leading to avoidable mistakes that cost time to correct. ECF No. 31 at 11; ECF No. 31-3 at 3. While "dependable . . . when there is a crunch and he is given clear direction," King concluded he could not depend on Gordon "to create graphics that are consistently accurate" or to "handle a large project from start to finish" independently, "without a large amount of direction and instruction." ECF No. 31 at 11; ECF No. 31-3 at 3. Ultimately, King gave Gordon a score of 1.67 out of 4. ECF No. 31-3 at 5. Gordon, on the other hand, gave himself a 3.33—double King's score. *Id.*

The following month, King put Gordon on a performance improvement plan ("PIP"). ECF No. 31 at 11. The PIP recapped that Gordon did not create graphics "at a speed . . . appropriate for the amount of time that he ha[d] been with the company," that he "appears to have problems focusing and completing a project" without specific instructions, and that his "attention to detail . . . needs to improve" because he continued to make errors "consistently from one project to the next with little sign of improvement." ECF No. 31-4 at 2. It recommended that Gordon "be

more diligent about double checking his work for errors" and communicate more "with design and software engineers to clarify any questions or issues" before they cause avoidable mistakes. *Id.* It also advised Gordon to use Digital Air's available training resources "to gain a more in-depth understanding of the" relevant software tools "to increase his efficiency," "take steps to increase his focus and proactivity," and track and plan his "responsibilities and priorities" better with Microsoft Planner. *Id.*

For his part, Gordon blamed his issues on a faulty computer, listing "computer process power" as a notable obstacle hindering his work performance. ECF No. 31-4 at 4. He mentioned his computer problems to King in summer 2022, ECF No. 31-5 at 228:1–18, but claims that Digital Air "ignored his complaints," ECF No. 37 at 21.

Evidently, things did not improve over the next 90 days. "[C]ontinu[ing] to find significant errors in [Gordon's] work" and seeing "little effort . . . to work with the team to avoid the errors," King fired Gordon on July 14, 2023. ECF No. 31 at 12–13; ECF No. 31-4 at 3.

Gordon sued King and his former coworker Marcus DiFlavio on July 19, 2024, asserting claims under Title VII in Texas state court. ECF No. 1. King and DiFlavio removed to federal court. *Id.* Gordon then joined Digital Air to the state-court case, and Digital Air promptly removed. ECF No. 6. Gordon then voluntarily

dismissed King and DiFlavio, leaving Digital Air as the only defendant. ECF No. 18.

During the normal course of discovery, the parties exchanged responses, productions, and objections. ECF No. 31 at 8–9. Digital Air deposed Gordon, and Gordon deposed King and DiFlavio. *Id.* at 9.

## II.   GORDON'S MOTION TO FILE AMENDED COMPLAINT IS DENIED.

First, the Court discusses Gordon's motion to file his amended complaint. Gordon tried to file an amended complaint on September 15, 2025. ECF No. 19. The Court struck it because Gordon did not first obtain leave. ECF No. 20.

Four months later, on January 12, 2026, Gordon asked for leave to file another amended complaint, seeking to add a claim under 42 U.S.C. § 1981. ECF No. 25. Without waiting for the Court to rule on the motion, Gordon plowed ahead and filed the amended complaint. ECF No. 26.

Federal Rule of Civil Procedure "16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S & W Enters., L.L.C. v. Sw. Bank of Ala.*, 315 F.3d 533, 536 (5th Cir. 2003). A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably [have been] met despite the diligence of the party needing the extension." *S & W Enters.*, 315 F.3d at 535 (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990)). Only if the movant

demonstrates good cause "to modify the scheduling order will the more liberal standard of Rule 15(a) apply . . . to grant or deny leave." *Id.* at 536. To determine whether good cause exists under Rule 16(b), courts consider "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* (alterations adopted) (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

Here, the Scheduling Order deadline to amend pleadings was June 2, 2025. ECF No. 13 at 1. Gordon filed his motion to amend on January 12, 2026—more than seven months after the deadline. ECF No. 25. He claims this long delay was justified because he learned information in King's and DiFlavio's depositions that he could not have discovered beforehand. *Id.* at 3. But § 1981 also prohibits race discrimination under "identical" standards as Title VII, *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1013 n.5 (5th Cir. 2023) (quoting *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)), meaning Gordon could have asserted it from the get-go along with his Title VII claim, *Chen v. Ochsner Clinic Found.*, 630 F. App'x 218, 227 (5th Cir. 2015) ("Each legal argument and putative dispute of material fact relevant to [Gordon's] § 1981 claim would thus be equally relevant to his Title VII claim . . . ."). Moreover, in his response to Digital Air's motion for summary judgment, Gordon admits that his new § 1981 claim arises

out of the same facts as his old Title VII claim and "[n]o new factual allegations are required." ECF No. 37 at 13. In other words, Gordon fails to explain why he could not have met the Scheduling Order's amendment deadline.

Gordon's "failure to account for [his] delay [is] dispositive, outweighing the other three factors for assessing good cause." *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 334 (5th Cir. 2012) (affirming denial of leave to amend based solely on party's failure to explain delay). Accordingly, the Court denies his motion for leave, ECF No. 25, and strikes his amended complaint, ECF No. 26.

### III.    GORDON'S MOTION TO STRIKE KING'S AND DIFLAVIO'S DEPOSITIONS IS DENIED.

Next, the Court turns to Gordon's motion to strike King's and DiFlavio's depositions. ECF No. 34. Gordon deposed King and DiFlavio on October 21, 2025. *Id.* at 4. Apparently, Gordon did not arrange for "a court reporter or anyone to administer the required oath or transcribe the[ir] testimony," but he unofficially recorded the audio. ECF No. 36 at 1–2; ECF No. 34 at 3. Now, Gordon asks the Court to strike King's and DiFlavio's depositions in their "entirety" and preclude Digital Air "from using any testimony obtained during the oath[-]less deposition[s]" while at the same time accepting the "audio recordings as evidence." ECF No. 34 at 4.

The motion is difficult to parse, mostly because it is unclear what Gordon means when he asks the Court to "accept and file" the "audio recordings as

evidence." *Id.* It seems that he used a third-party service to transcribe the recordings after the fact, *id.* at 7, and hopes to use excerpts from those transcriptions as evidence. DAC does not rely on these depositions in support of its motion, but Plaintiff does. Gordon's strategy poses obvious evidentiary issues, but the Court need not reach them here because the transcript citations in his response to Digital Air's summary judgment motion do not alter the Court's analysis.

Accordingly, the Court denies the motion to strike the depositions for the purposes of the summary judgment motion.

## IV.  DIGITAL AIR IS ENTITLED TO SUMMARY JUDGMENT.

### A.  Summary Judgment Standard

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cory v. Stewart*, 103 F.4th 1067, 1072–73 (5th Cir. 2024) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it could affect the suit's outcome under governing law." *Reynolds v. Kuraray Am., Inc.*, No. 4:22-CV-00182, 2026 WL 861071, at *2 (S.D. Tex. Mar. 30, 2026). "And '[a] dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* (internal quotation marks omitted) (alteration in original) (quoting *TIG Ins. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)). Conversely, "[t]here is no genuine issue for trial when 'the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party.'" *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion' and identifying the record evidence that 'it believes demonstrate[s] the absence of a genuine issue of material fact.'" *Reynolds*, 2026 WL 861071, at *2 (alteration in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Id.* (alterations in original) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

"'[O]nce a movant who does not have the burden of proof at trial makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that the motion should not be granted' by 'identify[ing] specific evidence in the record and articulat[ing] the precise manner in which that evidence supports her claim.'" *Associated Prof'l Educators of La. v. Edu20/20, L.L.C.*, No. 24-30640, 2026 WL 448019, at *8 (5th Cir. Feb. 18, 2026) (second and third alterations in original) (quoting *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016)). The district court does not "have a duty to sift through the record in

search of evidence to support the nonmovant's opposition to summary judgment." *Id.* (internal quotation marks omitted) (quoting *Edwards*, 841 F.3d at 363).

Courts must "resolve factual controversies in favor of the nonmoving party" but need "not consider 'conclusional allegations and unsubstantiated assertions.'" *Cory*, 103 F.4th at 1073 n.8 (first quoting *Little*, 37 F.3d at 1075; and then quoting *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011)).

### B. Gordon Cannot Prove His Discrimination or Retaliation Claims.

Gordon asserts three Title VII claims against Digital Air based on racial discrimination: one for wrongful termination, another for hostile work environment, and the final one for retaliation. ECF No. 6-2 at 4–5.[5] Each fails.

### i.    *Gordon cannot prove his wrongful-termination claim.*

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [the] individual's race." 42 U.S.C. § 2000e-2(a)(1).

"A plaintiff who can offer sufficient direct evidence of intentional discrimination should prevail[.]" *Clark v. City of Alexandria*, 116 F.4th 472, 486 (5th Cir. 2024) (quoting *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir.

---

[5] ECF No. 6-2 names King and DiFlavio as defendants. When Gordon later dismissed King and DiFlavio from the case, he substituted Digital Air and kept "the original petition information of . . . King and . . . DiFlavio because they are employees of the company." ECF No. 6-12. While unorthodox, the Court takes this to mean that Gordon asserts the same causes of action against Digital Air that he previously asserted against King and DiFlavio.

1996)), *cert. denied*, 145 S. Ct. 1331 (2025). Here, Gordon admits he has no direct evidence of intentional racial discrimination. ECF No. 37 at 8.

Without direct evidence, Gordon must rely on circumstantial evidence. "[B]ecause direct evidence of discrimination is rare," the Supreme Court devised a burden-shifting procedure—dubbed the *McDonnell Douglas* framework—that "establishes an orderly presentation of proof in discrimination cases." *Clark*, 116 F.4th at 486 (quoting *Nichols*, 81 F.3d at 40). Under that framework, a plaintiff must first demonstrate that "(1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged or suffered some adverse employment action; and (4) he was replaced by someone outside of his protected group or was treated less favorably than other similarly-situated employees outside the protected group." *Kirksey v. Nat'l Multiple Sclerosis Soc'y*, No. 4:24-CV-00871, 2026 WL 765267, at *6 (S.D. Tex. Jan. 15, 2026) (citing *Clark*, 116 F.4th at 486), *adopted*, No. 4:24-CV-00871, 2026 WL 712860 (S.D. Tex. Mar. 13, 2026). If the plaintiff can satisfy that initial hurdle, "the burden then shifts to the employer to 'articulate a legitimate non-discriminatory reason for' its action." *Id.* (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016)). If the employer offers a nondiscriminatory justification, "the burden shifts back to the plaintiff 'to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual.'" *Id.* (quoting *Cannon*, 813 F.3d at 590).

It is undisputed that Gordon is Black and therefore is a member of a protected group, he was qualified for his position at Digital Air, and he was discharged. The only issue, then, is whether a reasonable jury could find that he was replaced by a non-Black person or was treated less favorably than similarly situated non-Black person. Gordon can prove neither.

Here, Gordon claims that Digital Air replaced him "with a less experienced non-Black UI specialist" shortly "after terminating him." ECF No. 37 at 28. To support this assertion, he cites a portion of DiFlavio's unofficial deposition transcript. Yet, after reviewing the cited excerpt, the Court finds that Gordon never asked DiFlavio about the race of the UI specialist who replaced him, nor did DiFlavio mention it. *Id.* at 48. Without evidence to establish that Digital Air replaced him with someone outside his protected class, Gordon must establish less favorable treatment.

To prove less favorable treatment, "he must 'point to a comparator who was similarly situated and received more favorable treatment under *nearly identical circumstances.*'" *Clark*, 116 F.4th at 486 (emphasis added and internal quotation marks omitted) (quoting *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021)).

Here, Gordon struggles to establish an adequate comparator. For example, he claims that "[h]e was the only employee in his department disciplined, placed on a

PIP, and ultimately terminated, despite similar deficiencies among colleagues." ECF No. 37 at 31. To substantiate this claim, Gordon cites "Exhibit 1-10 and 1-11." *Id.* As best as the Court can guess, these exhibits constitute a single chart that contains the names of nine Digital Air employees along with their job titles, approximate employment dates, and a summary of their technical knowledge and skills. *Id.* at 71–72. The chart, however, is unsworn and unauthenticated. Nothing indicates who created it or when, nor is there any indication about where the creator gleaned the underlying information or what documents or sources they relied on. Even worse, Gordon apparently did not produce it during discovery. ECF No. 38 at 2. A more egregious example of inadmissible hearsay is difficult to imagine. Thus, it is not competent summary judgment evidence.

Gordon next asserts that a "White employee," a "UI specialist hired [in] March 2022," "received brand new computer equipment immediately upon hire, while [he] was given an inadequate used computer that impaired his ability to perform essential job duties." ECF No. 37 at 33. "The White UI specialist," Gordon contends, "did not suffer discipline for performance issues," nor was he placed on a PIP "despite similar performance outcomes." *Id.* Tellingly, Gordon cites no record evidence to establish that the UI specialist was white or that the UI specialist performed similarly to him. Self-serving, barebones, probably-AI-generated assertions in legal briefs are not evidence; they cannot raise a fact issue alone.

Gordon cites one other instance to try to establish disparate treatment. At some point, King reprimanded him for using his phone too much on the job. ECF No. 37-1 ¶ 16. During the reprimand, King reminded Gordon that Digital Air had fired a former employee named Rashimas for excessive phone usage. ECF No. 31 at 25. Since Rashimas is also Black, Gordon took the comment as an example of racial stereotyping. *Id.*; ECF No. 31-5 at 121:4–18, 250:20–251:13. However, Gordon himself agreed that Rashimas deserved to be fired. ECF No. 31-5 at 251:9–11. In fact, when asked during his deposition if he thought "King made reference to Rashimas . . . to signal . . . that being Black had something to do with Rashimas's firing," Gordon answered, "no." *Id.* at 123:8–12. He further conceded that King could have simply referred to Rashimas because Rashimas was the only "person [King] was aware of that had been fired for being on the phone too much." *Id.* at 123:20–23. In other words, not even Gordon believes King's comment demonstrates racial animus or establishes disparate treatment.

Gordon's theory of the case basically boils down to his allegedly faulty computer. As he explains, "he reported legitimate computer issues that impaired his ability to perform" his job, but Digital Air "repeatedly failed to address" his complaints, placed him on a PIP, and fired him. ECF No. 37 at 19–20. In his mind, "[t]his sequence of events raises an inference that" he was fired "because of his race." *Id.* Yet, nothing about that sequence even remotely suggests racial

discrimination, and Gordon points to no evidence suggesting otherwise. He does not allege, much less prove, that other non-Black employees who complained about computer problems received prompt assistance. Based on the record, it could be the computer was not the problem at all. Gordon admits in his response that he received a "raise while using the same computer . . . , *undermining the notion that the machine made him . . . less capable*." *Id.* at 29 (emphasis added). He also did not complain to King about his computer for nearly a year before being put on the PIP. ECF No. 38 at 8–9; ECF No. 38-2 at 224:12–15.

Whatever the case, Title VII is "not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers." *Bailey v. KS Mgmt. Servs., LLC*, No. 4:20-CV-00059, 2025 WL 1843724, at *7 (S.D. Tex. Mar. 17, 2025) (quoting *Horak v. Glazer's Wholesale Drug Co., Inc.*, No. CIV.A. 3:05-CV-901-K, 2006 WL 2017110, at *7 (N.D. Tex. July 19, 2006), *aff'd*, No. 06-10854, 2007 WL 713154 (5th Cir. Mar. 6, 2007)). Nor does it provide "the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Eyob v. Mitsubishi Caterpillar Forklift Am., Inc.*, 745 F. App'x 209, 212 (5th Cir. 2018) (quoting *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006)), as revised (Aug. 10, 2018).

At bottom, there is no evidence that non-Black employees were treated any

differently—let alone more favorably. Accordingly, Gordon cannot establish a *prima facie* case, and Digital Air is entitled to summary judgment.

Additionally, even if the Court assumes that Gordon could establish a *prima facie* case, his claim would still fail because Digital Air has articulated legitimate, nondiscriminatory reasons for its actions and Gordon has provided no evidence to rebut those reasons as pretext.

Digital Air says it terminated Gordon because he continued to make "significant errors in his work" and failed to communicate with his team to avoid unnecessary mistakes. ECF No. 31 at 13; ECF No. 31-4 at 3. "To establish pretext, [a plaintiff] must show that [the defendant's] proffered explanation is false or unworthy of credence." *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 421 (5th Cir. 2024) (alterations in original) (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011)). "[T]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 900 (5th Cir. 2025) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)).

Here, Gordon admits he had "some performance deficiencies" as of April 2023—the same month King put him on the PIP. ECF No. 31-5 at 231:21–23. Although Gordon disagrees with King's reasoning—evidenced by the fact that he scored himself twice as high as King in his March 2023 performance evaluation—

when asked if he though King's reasons were "all false," he conceded that King may have simply viewed his performance "very differently." *Id.* at 245:12–23. Thus, Gordon fails to establish a genuine dispute of material fact as to whether Digital Air's nondiscriminatory explanation for firing him was "false or unworthy of credence." *Yates*, 115 F.4th at 422 (quoting *Vaughn*, 665 F.3d at 637). Even if King was wrong and defective computer equipment caused all Gordon's errors, King's honest but incorrect reasons would still be legitimate. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1002 n.8 (5th Cir. 2022) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." (alteration in original) (quoting *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991))).

Accordingly, Gordon cannot prove his wrongful-termination claim, and Digital Air is entitled to summary judgment.

### ii.   *Gordon cannot prove his hostile-work-environment claim.*

"A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment." *Webber v. Leson Chevrolet Co.*, No. 24-30637, 2025 WL 3218680, at *3 (5th Cir. Nov. 18, 2025) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "To establish a *prima facie* case of racial harassment, [Gordon] needs to demonstrate that (1) he belongs to a protected group, (2) he experienced unwelcome harassment, (3) this harassment was based on

race, (4) the harassment affected a term, condition, or privilege of employment, and (5) [Digital Air] knew or should have known of the harassment and failed to take prompt remedial action." *Id.*

It is unclear exactly what behaviors Gordon alleges as harassment. He merely states that his "evidence—viewed collectively—demonstrates ongoing disparate scrutiny, unjustified discipline, and differential treatment tied to race," although he does not cite any record evidence to support these assertions. ECF No. 37 at 10. Nonetheless, Gordon is likely referring to his computer issues, King's comment about Rashimas, and his unfavorable March 2023 performance review and subsequent PIP.

First, Gordon does not explain—much less argue—that Digital Air's alleged failure to fix or upgrade his computer constitutes "unwelcome harassment." The Court concludes it does not.

Second, as explained above, Gordon admits that King did not mean to imply "that being Black had something to do with Rashimas's firing." ECF No. 31-5 at 251:9–11.

Third, King scored Gordon poorly on his March 2023 evaluation and subsequent PIP because of performance-related issues—nothing to do with race. Gordon produces no evidence suggesting otherwise. In fact, he admits that King's reasoning was not pretextual, stating it was simply a result of a "very different[]"

perspective of his work performance. *Id.* at 245:12–23.

Taken separately or together, these actions do not qualify as harassment. But even if they did, Gordon fails to submit a shred of evidence suggesting they were based on race. Accordingly, Gordon's hostile-work-environment claim fails, and Digital Air is entitled to summary judgment.

### iii.    *Gordon cannot prove his retaliation claim.*

"To state a claim for retaliation," a plaintiff must "show that (1) []he engaged in conduct protected by Title VII; (2) []he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Hamilton v. DeJoy*, No. 24-50597, 2025 WL 25693, at *2 (5th Cir. Jan. 3, 2025), *cert. denied sub nom. Hamilton v. Steiner*, 146 S. Ct. 101 (2025).

Gordon's retaliation claim stumbles right out of the gate. Generally, Title VII protects employees from retaliation for reporting discriminatory employment practices. *Id.*; *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) ("We have interpreted Title VII's opposition clause to mean that a plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violated Title VII." (quoting *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016))). Here, Gordon never reported race discrimination while working at Digital Air. ECF No. 31-5 at 34:4–16. Instead, Gordon contends he "engage[d] in a protected activity by opposing a perceived

discriminatory practice when he reported the computer issues that directly impeded his job performance." ECF No. 37 at 23. Complaining about IT issues is not a protected activity under Title VII.

Even if it were, Gordon submits no evidence to establish causation. Everything in the record suggests Digital Air fired him because of his work performance. Whether his work performance was caused by a bad computer is irrelevant for retaliation purposes. What matters is whether Digital Air fired him because of his *complaints* about the bad computer—assuming those complaints constituted protected activity. Gordon offers no evidence to establish that link.

Accordingly, Gordon cannot prove his retaliation claim, and Digital Air is entitled to summary judgment.

## V.    CONCLUSION

Accordingly, the Court **DENIES** Gordon's motion for leave to file an amended complaint, ECF No. 25, and **STRIKES** his amended complaint, ECF No. 26.

The Court further **DENIES** Gordon's motion to strike King's and DiFlavio's depositions. ECF No. 34.

The Court further **RECOMMENDS** that Digital Air's motion for summary judgment, ECF No. 31, be **GRANTED**.

The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).

IT IS SO ORDERED.

Signed at Houston, Texas, on June 8, 2026.

Dena Hanovice Palermo
United States Magistrate Judge